IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JERRIN WRIGHT, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 10-702-LPS |
| | : | |
| DAVID PIERCE, Warden, and JOSEPH R. BIDEN, III, Attorney General of the State of Delaware, | : : : | |
| | : | |
| Respondents. | : | |

Joseph M. Bernstein, Esquire. Attorney for Petitioner.

Gregory Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

March 24, 2014
Wilmington, Delaware

*[signature: Leonard P. Stark]*

**STARK, U.S. District Judge:**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Jerrin Wright ("Petitioner"). (D.I. 2) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

As set forth by the Delaware Supreme Court, the facts of Petitioner's case are as follows:

> Shortly before the closing time at the Nu-Phaze Bar and Grill, [Roland] Harris went outside to the parking lot, and was talking with two men when he noticed [Petitioner] looking at him. Harris and [Petitioner] had known each other for approximately 13 years, since high school. Because it was closing time, several other persons were also in the parking lot. Harris asked [Petitioner] why was he looking at him, and a verbal argument resulted. [Petitioner] displayed a handgun that was tucked in his waistband. After Harris told [Petitioner] that he was not "scared of a gun," [Petitioner] pulled the gun out and pointed it at Harris. Continuing to reaffirm his lack of fear, Harris moved towards [Petitioner], who then fired two shots in Harris' direction. The shots whizzed by either side of Harris, who continued "going after" [Petitioner] through the parking lot. [Petitioner] backed away, but continued to shoot in Harris' direction. According to Harris, [Petitioner] shot the gun "four, five times." At that point, Harris' uncle told Harris to "chill," because [Petitioner] had shot someone. While Harris was being restrained by his uncle, [Petitioner] continued shooting and then retreated to his car. [Petitioner] fired one more shot at Harris, and drove away, threatening to kill Harris. At trial, Harris testified that [Petitioner] had fired "[m]aybe nine or ten" times all together. The police recovered five 9 mm casings, all fired from the same gun. At trial, it was established that one of [Petitioner's] shots had struck [Scott] Lubitz in the head, killing him.

*Wright v. State*, 953 A.2d 144 (Del. 2008).

On November 14, 2005, Petitioner was indicted for the offenses of first degree murder, (recklessly causing the death of Lubitz while committing the felony of reckless endangering Harris); first degree reckless endangering of Harris; and two related weapons charges. A Delaware Superior Court jury convicted Petitioner of the lesser-included offense of second

1

degree (felony) murder of Lubitz, first degree reckless endangering of Harris, and both weapons charges. The Delaware Supreme Court affirmed Petitioner's convictions on direct appeal. *Id.*

In January 2009, represented by counsel, Petitioner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court initially denied the Rule 61 motion as conclusory, but permitted Petitioner to file an amended motion. *See In re Wright*, 2009 WL 3069574, at *2 n.1 (Del. Super. Ct. 2009). Thereafter, on March 30, 2009, Petitioner filed an amended Rule 61 motion. The Superior Court denied the motion in September 2009, and the Delaware Supreme Court affirmed that decision. *See Wright v. State*, 994 A.2d 745 (Table), 2010 WL 2163851 (Del. May 27, 2010). Petitioner timely filed the instant Petition. The State filed an Answer, asserting that the Petition should be denied in its entirety as meritless.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford,* 538 U.S. at 206.

2

**B.     Legal Standards**

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to

factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

The Petition asserts two grounds for relief: (1) appellate counsel, who also represented Petitioner during his criminal trial, provided ineffective assistance by failing to pursue on direct appeal the double jeopardy/multiplicity argument counsel raised in the motion for acquittal; and (2) trial counsel was ineffective for failing to oppose Petitioner's sentencing as an habitual offender. Petitioner presented these arguments to the Delaware Supreme Court in his post-conviction appeal, and the Delaware Supreme Court denied the claims as meritless. Therefore, habeas relief will only be warranted if the Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established federal law for ineffective assistance of counsel claims is the two-pronged standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92

(3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Consequently, an attorney's decision about which issues to raise on appeal are generally considered to be strategic,[1] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them." *United States v. Turner*, 677 F.3d 570, 577 (3d Cir. 2012) (internal citation omitted).

In Petitioner's case, the Delaware Supreme Court analyzed Petitioner's claims within the *Strickland* framework. Therefore, the Delaware Supreme Court's denial of his two ineffective assistance of counsel claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing this inquiry, the Court must review the Delaware Supreme Court's decision

---

[1]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without facing specter of being labeled ineffective).

with respect to Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.[2] *Richter*, 131 S.Ct. at 788. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786.

### A. Claim One: Ineffective Assistance of Appellate Counsel

Following Petitioner's convictions, trial counsel filed a motion for acquittal for the second degree felony murder conviction. Trial counsel argued that Petitioner's conviction for second degree felony murder violated his rights under the Double Jeopardy Clause and state law because the predicate felony of reckless endangering was an included offense to the offense of second degree murder, and both Harris and Lubitz were within the same "zone of danger" and endangered by the same conduct. After applying the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the trial court concluded that second

---

[2]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

131 S.Ct. at 788 (internal citations omitted).

6

degree felony murder and first degree reckless endangering were different offenses and, therefore, denied the motion for acquittal. (D.I. 11, App. to Appellant's Op. Br. in *Wright v. State*, No.584,2009, at A-17 to A-18) Trial/appellate counsel did not pursue the double jeopardy argument on direct appeal.

In his Rule 61 motion, Petitioner alleged that counsel's failure to pursue the double jeopardy/multiplicity argument on direct appeal amounted to ineffective assistance. Petitioner asserted that a person who fires shots into a crowd engages in one act of reckless endangering, regardless of the number of victims. Relying on this premise, Petitioner contended that Harris and Lubitz were both victims of one criminal act (reckless endangering), and hence the State improperly indicted him on multiple charges. Petitioner then concluded the argument by alleging that his felony murder conviction must be vacated because the reckless endangering charge merged with the murder charge, leaving no predicate felony for the felony murder conviction.

Petitioner acknowledged that no Delaware cases discussed the appropriate "unit of prosecution" for the offense of reckless endangering, but asserted that the offense of first degree arson considered by the Delaware Supreme Court in *Handy v. State*, 803 A.2d 937 (Del. 2002), was analogous to the offense of reckless endangering involved in his case. In *Handy*, the Delaware Supreme Court held that charging multiple counts of arson for multiple intended victims when only one act of arson was involved violated the multiplicity doctrine of the Double Jeopardy Clause. *See id.* Because the arson statute in *Handy* contained the same "another person" phrase contained in the reckless endangerment statute at issue in Petitioner's case, Petitioner contended that the State improperly divided a single count of reckless endangering into two separate charges based solely on the identity of the victims. According to Petitioner,

appellate counsel "should have been aware that the decision in *Handy* provided strong ammunition to support [Petitioner's] double jeopardy claim." (D.I. 11, App. to Appellant's Op. Br. in *Wright v. State*, No.584,2009, at A-30) As such, Petitioner concluded that appellate counsel should have argued that the reasoning in *Handy* applied to the reckless endangering statute, prohibited charging multiple counts of reckless endangering for multiple victims, and necessitated vacating Petitioner's conviction for second degree murder/felony murder which was based on the predicate felony of reckless endangering.[3] (*Id.* at A-34)

In his Rule 61 affidavit, trial/appellate counsel responded to Petitioner's Rule 61 argument in the following manner:

> In the process of preparing [the motion to dismiss], I gave further consideration to the position that I had articulated. I reconsidered and decided that, in fact, it was within the purview of the General Assembly to define Murder in the First Degree, and if it chose, to make a homicide first degree murder by committing a coincident felony while recklessly killing another person, it had the authority to do so. If offenses such as Burglary, Arson, and Robbery could legally represent the "trigger event" under 11 Del. C. § 635(a)(2), then obviously, Reckless Endangering which has, at least, the same propensity for causing injury or death as the others could act as a "triggering event" under that subsection. How could I argue meaningfully that (a)(2) applied if coincident

---

[3]The underlying double jeopardy argument Petitioner asserted in his Rule 61 proceeding differed from the double jeopardy argument asserted in trial counsel's motion for acquittal. For instance, the motion for acquittal contended that Petitioner could not be convicted of both felony murder and the underlying felony of reckless endangering when the murder victim and the different "endangered" victim occupied the same zone of danger as a result of one act. In Petitioner's Rule 61 motion, post-conviction counsel asserted that the *Handy* Court's analysis of the arson statute's language and use of the phrase "another person" demonstrated that the two separate charges of reckless endangering in Petitioner's case violated the multiplicity prong of the Double Jeopardy Clause. Post-conviction counsel contended that the General Assembly did not intend that Petitioner could be charged with more than one count of reckless endangering merely on the ground that his conduct created a substantial risk of death to more than one person. Despite these slightly different double jeopardy arguments, the Court must still apply the deferential standard of § 2254(d) to the Claim One because Petitioner's instant ineffective assistance of appellate counsel claim is based on the same underlying double jeopardy argument raised, and denied, in his Rule 61 proceeding.

8

> offense is a Burglary, a property crime, but not Reckless
> Endangering First Degree, a person crime.
>
> Notwithstanding [my earlier] position that *Handy v. State*, 803 A.2d 937 (Del. 2002) is a "game saver" (my characterization), by its own terms it is not applicable. . . . Unlike Arson, which is a property crime, Reckless Endangering is a "person" crime thereby preventing the extrapolation of the *Handy* principle.

(*Id.* at A-38, A-39)

The Superior Court considered both parties' submissions and, after describing the difference between crimes against people and crimes against property, concluded that *Handy* did not support Petitioner's double jeopardy argument because the arson that occurred in *Handy* constituted a crime against property, whereas the reckless endangering that occurred in Petitioner's case constituted a crime against a person. *See Wright*, 2009 WL 3069574, at *2. As a result, the Superior Court opined that "each person that was 'down range' from [Petitioner's] multiple firings was a potential victim of his reckless conduct," such that Petitioner committed another offense every time he pulled the trigger. *Id.* Thus, the Superior Court held that appellate counsel "committed no error in choosing not to appeal this issue because he was correct in concluding there was no merit in pursuing the double jeopardy claim in the [Delaware] Supreme Court." *Id.* The Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal, because *Handy* was inapplicable and the underlying double jeopardy claim was without merit. *See Wright*, 2010 WL 2163851, at *2.

Now, in Claim One, using the same reasoning from his Rule 61 motion, Petitioner contends that appellate counsel was ineffective for not pursuing on direct appeal the argument that Petitioner's convictions violated the multiplicity doctrine of the Double Jeopardy Clause. This argument is unavailing.

9

Turning first to the prejudice prong of the *Strickland* test, Petitioner has failed to demonstrate a reasonable probability that the result of his direct appeal would have been different but for appellate counsel's failure to pursue the instant double jeopardy argument. The Double Jeopardy Clause protects a defendant against: (1) successive prosecutions; (2) multiple charges under separate statutes requiring proof of the same factual events; and (3) multiple charges under the same statute. (U.S. const. amend. V) The multiplicity doctrine involves the third of these protections. *See Sanabria v. United States*, 437 U.S. 54, 65 n.19 (1978). When a defendant is convicted of violating one statute multiple times, "the question is whether the facts underlying each count were intended by [the legislature] to constitute separate 'units' of prosecution."[4] *Bell v. United States*, 349 U.S. 81, 83-84 (1955). In other words, when determining whether the imposition of multiple punishments and/or convictions in a single prosecution violates the double jeopardy clause, the "clearly established" Supreme Court precedent requires a court to ascertain whether the multiple punishments and/or convictions comply with the legislative intent of the applicable statutes.

Determining legislative intent "must begin with the language employed by [the legislature] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350 (2009). If the statutory language is clear and unambiguous, the plain meaning of the statutory language controls, and the reviewing court's inquiry is at an end. *See Jimenez v. Quaterman*, 129 S.Ct. 681, 685 (2009); *Chase Alexa v. Kent County Levy Court*, 991 A.2d 1148 (Del. 2010). If the statutory language does not express the legislative intent unequivocally, "a court traditionally

---

[4]Conversely, when two different statutory provisions are involved, a court determines if a double jeopardy violation has occurred by using the "same elements" test articulated in *Blockburger*, which involves examining the elements of the crimes to assess whether each offense "requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304.

turns to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose."[5] *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000).

As explained by the Delaware Supreme Court in *Handy*, when "determining whether a legislature contemplated the charging of multiple offenses based on multiple victims, Delaware courts have considered whether the offense is one against people or against property." *Handy*, 803 A.2d at 943. After referring to this principle for discerning legislative intent, the Delaware Supreme Court in Petitioner's case independently analyzed the General Assembly's intent with respect to the reckless endangering statute, and concluded that reckless endangering is a crime against people, not property. *See Wright*, 2010 WL 2163851, at *2. Consequently, the Delaware Supreme Court held that the State could have charged Petitioner with multiple counts of reckless endangering, "given the fact that he shot into a crowd at least five times." *Id.*

On habeas review, the Court must defer to the Delaware state courts' determination of state law. Here, the Delaware Supreme Court reviewed the General Assembly's intent to distinguish between crimes against property and crimes against people, and analyzed how the reckless endangerment statute fits within that general legislative framework. As such, the Court must defer to the Delaware Supreme Court's holding that (1) the General Assembly intended to permit the charging of multiple crimes for multiple victims where the crime is one against people, (2) reckless endangerment constitutes a crime against people, (3) the reasoning in *Handy* is inapplicable to Petitioner's case, and (4) there can be multiple counts of reckless endangering

---

[5]Determining whether statutory language is ambiguous or plain requires an examination of the statutory language itself, the context in which the language is used, and the broader context of the statute as a whole. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "Once the plain meaning of the statute is determined, it is conclusive except in rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000).

11

when there are multiple victims. Moreover, the Court notes that the plain language of the reckless endangerment statute,[6] as well as the nature of reckless endangerment as a crime against the person, demonstrates that the Delaware Supreme Court reasonably applied *Sanabria* and its progeny in holding that the unit of prosecution for the crime of reckless endangerment is each person endangered, rather than each endangering act.

Based on the foregoing, the Court concludes Delaware Supreme Court reasonably applied clearly established Federal law in holding that the Double Jeopardy Clause was not implicated in Petitioner's conviction for second degree felony murder. In turn, the Court further concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that Petitioner was not prejudiced by appellate counsel's failure to raise the meritless double jeopardy argument on direct appeal.

Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).[7]

---

[6]A person is guilty of first degree reckless endangering when "the person recklessly engages in conduct which creates a substantial risk of death *to another person*." 11 Del. Code Ann. § 604 (emphasis added).

[7]Although the Court's finding under the prejudice prong of the *Strickland* test provides a sufficient basis for concluding that appellate counsel was not ineffective, the Court also concludes that Petitioner has failed to satisfy the deficient performance prong of the *Strickland* test. In *Strickland*, the Supreme Court opined that "counsel has a duty to make reasonable investigations," and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Here, having unsuccessfully raised a somewhat different double jeopardy argument in the motion for acquittal, appellate counsel performed additional research and determined that any further double jeopardy argument lacked merit. Given the Delaware state courts' identical conclusion regarding the inapplicability of *Handy*, appellate counsel's rational and well-reasoned decision not to pursue the double jeopardy claim any further did not fall below an objective standard of reasonableness.

### B.    Claim Two: Ineffective Assistance of Trial/Appellate Counsel Regarding Habitual Offender Status

In 1997, Petitioner was charged with possession with intent to deliver marijuana, maintaining a vehicle for keeping drugs, possession of drug paraphernalia, speeding, and operating a vehicle with tinted windows. As part of a plea bargain, Petitioner pled guilty to second degree conspiracy and possession of drug paraphernalia. Petitioner's 1997 conviction for second degree conspiracy served as one of the predicate offenses for his status as an habitual offender when he was sentenced for the 2005 convictions being challenged here.

Now, in Claim Two, Petitioner asserts that the police report concerning the 1997 incident shows the invalidity of his guilty plea to second degree conspiracy, because the report states that Petitioner was driving alone when he was stopped by the police. As such, he contends that trial/appellate counsel was ineffective for failing to argue at sentencing or on direct appeal that his alleged invalid conspiracy conviction could not have served as the predicate felony for his habitual offender status. This argument is unavailing.

The Delaware Supreme Court denied this same argument on post-conviction appeal for two reasons. "First, when a guilty plea is entered, the factual basis for such a plea is most clearly established by a defendant's specific admission in open court that he did what he is charged with doing. [In this case, Petitioner] provided no evidence to suggest that he pled guilty without admitting his guilt." *Wright*, 2010 WL 2163851, at *3. Second, "although the crime of conspiracy requires at least two participants, the co-conspirators do not have to be together at the time of the arrest." *Id.*

In this proceeding, the Court must accept as correct the Delaware Supreme Court's implicit factual finding that Petitioner's guilty plea to the conspiracy charge was valid, because Petitioner has not provided any clear and convincing evidence to the contrary. Additionally, the

13

Delaware Supreme Court's conclusion is further supported by (1) Petitioner's failure to allege that his 1997 plea was involuntary; and (2) Petitioner's failure to contest the validity of the conspiracy conviction during the nine-and-one-half year period between the conspiracy conviction and the 2005 convictions being challenged here, even though he was found in violation of probation on that conviction three times.

Given Petitioner's failure to provide any clear and convincing evidence to the contrary, the Court concludes that the Delaware Supreme Court reasonably held that Petitioner's guilty plea constitutes an admission that he committed the conspiracy offense. *See United States v. Broce*, 488 U.S. 563, 570 (1989) ("By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of the substantive crime."). In turn, the Court further concludes that the Delaware Supreme Court reasonably applied *Strickland* in rejecting Petitioner's argument that trial/appellate counsel was constitutionally ineffective for failing to pursue Petitioner's meritless allegations about the invalidity of his 1997 conviction. Thus, the Court will deny Claim Two for failing to satisfy § 2254(d).

Accordingly, the Court will deny the Petition in its entirety.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

14

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.     CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.